Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SOMMESE,<br><br>     Plaintiff,<br><br>   vs.<br><br>STEEL CONNECT, INC., WARREN G. LICHTENSTEIN, GLEN M. KASSAN, JACK L. HOWARD, JEFFREY J. FENTON, JEFFREY S. WALD, MARIA MOLLAND, and RENATA SIMRIL,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Sommese ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Steel Connect, Inc. ("Steel Connect" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to Steel Partners Holdings L.P. ("Parent"), through merger vehicle SP Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Steel Partners") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Steel Connect's common stock will be converted into the right to receive $1.35 in cash, without interest as well as a Contingent Value Right which may entitle the holder to receive a Pro Rata share of the net proceeds of the fair market value of the aggregate amount of gross proceeds received by the Company, Parent or any of their affiliates in connection with one or more ModusLink sales that are consummated prior to the sale deadline. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on July 7, 2022, Steel Connect filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board

Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Steel Connect, provided by Steel Connect management to the Board and the Board's financial advisor Houlihan Lokey Capital, Inc. ("Houlihan") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Houlihan, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a Steel Connect stockholder.

8.      Defendant Steel Connect provides direct marketing and supply chain services in the United States, Mainland China, and internationally. Steel Connect is incorporated in Delaware and has its principal place of business at 2000 Midway Lane, Smyrna, Tennessee 37167.  Shares of Steel Connect common stock are traded on the Nasdaq Stock Exchange under the symbol "STCN".

9.      Defendant Warren G. Lichtenstein ("Lichtenstein") has been a Director of the Company at all relevant times.  In addition, Lichtenstein serves as the Executive Chairman of the Board of Directors.

10.      Defendant Glen M. Kassan ("Kassan") has been a director of the Company at all relevant times.

11.      Defendant Jack L. Howard ("Howard") has been a director of the Company at all relevant times.

12.      Defendant Jeffrey J. Fenton ("Fenton") has been a director of the Company at all relevant times.

13.      Defendant Jeffrey S. Wald ("Wald") has been a director of the Company at all relevant times.

14.      Defendant Maria Molland ("Molland") has been a director of the Company at all relevant times.

15.      Defendant Renata Simril ("Simril") has been a director of the Company at all relevant times.

16.      Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17.      Non-Party Steel Partners engages in industrial products, energy, defense, supply chain management, logistics, banking, and youth sports businesses worldwide. Shares of Steel Partners common stock are traded on the New York Stock Exchange under the symbol "SPLP."

18.      Non-Party Merger Sub is a wholly owned subsidiary of Steel Partners created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     Steel Connect, Inc., together with its subsidiaries, provides direct marketing and supply chain services in the United States, Mainland China, and internationally. The Company provides data-driven marketing solutions, including strategy, data and analytics, response analysis, creative services, lithographic and digital printing, envelope printing and converting, component manufacturing, promotional cards, data processing and hygiene, content and asset management, personalization, lettershop and bindery, and postal optimization and omnichannel marketing

campaigns, as well as provides business continuity and disaster recovery services. It also offers product configuration and packaging, kitting, and assembly of components and parts into finished goods; and value-added processes, such as product testing, radio frequency identification tagging, product or service activation, language settings, personalization and engraving, multi-channel packaging, and packaging design services. In addition, the Company provides fulfillment services comprising order management, pick, pack and ship, retail compliance, and demand planning services; and reverse logistics services that simplifies the returns process for retailers and manufacturers, as well as operates a cloud-based e-commerce platform. Steel Connect, Inc. offers its supply chain services to customers in the consumer electronics, communications, computing, medical devices, software, and retail markets. The Company was formerly known as ModusLink Global Solutions, Inc. and changed its name to Steel Connect, Inc. in February 2018. Steel Connect, Inc. was incorporated in 1986 and is headquartered in Smyrna, Tennessee.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the March 17, 2022 press release announcing its 2022 Q2 financial results, the Company highlighted net revenue of 120.6 million.

24.     Speaking on the positive results in light of global supply chain challenges, CEO Defendant Lichtenstein said, "We remain focused on containing costs while driving growth with our current and new customers."

25.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Steel Connect.  Clearly, based upon the positive outlook, the Company is likely to have future success.

26.     Despite this upward trajectory, the Individual Defendants have caused Steel Connect to enter into the Proposed Transaction without providing requisite information to Steel Connect stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Additionally, the Proposed Transaction is a foregone conclusion, with Parent owning a 50.0% of the outstanding common shares and Company insiders collectively owning another 7.3%, Common shareholders such as plaintiff are left with no recourse to stop the Proposed Transaction. Unfortunately, the Preliminary Proxy fails to account for this issue because it provides no provision for minority shareholder rights, specifically a majority of minority voting provision.

29.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31.     On June 13, 2022, Steel Connect and Steel Partners issued a joint press release

announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NEW YORK & SMYRNA, Tenn.--(BUSINESS WIRE)--Jun. 13, 2022**-- Steel
> Partners Holdings L.P. (NYSE: SPLP), a diversified global holding company
> ("Steel Partners") and Steel Connect, Inc. (NASDAQ: STCN) ("Steel Connect")
> today announced that they have signed a definitive merger agreement pursuant to
> which Steel Partners will acquire the remaining common stock of Steel Connect
> issued and outstanding immediately prior to the effective time of the merger. The
> holders of Steel Connect's outstanding shares of common stock will receive US
> $1.35 per share in cash and one contingent value right ("CVR") to receive their pro
> rata share of net proceeds, to the extent such net proceeds exceed $80 million plus
> certain related costs and expenses, if Steel Connect's ModusLink subsidiary is sold
> during the two-year period following completion of the merger.
>
> Steel Connect's Board of Directors, acting on the unanimous recommendation of
> the special committee of the Board of Directors (the "Special Committee"), and the
> Board of Directors of Steel Partners' General Partner approved the merger
> agreement and the transactions contemplated by the merger agreement and resolved
> to recommend the stockholders adopt the merger agreement and approve the
> transactions contemplated by the merger agreement.The Special Committee, which
> is comprised solely of independent and disinterested directors of Steel Connect who
> are unaffiliated with Steel Partners, exclusively negotiated the terms of the merger
> agreement with Steel Partners, with the assistance of its independent financial and
> legal advisors.
>
> Upon closing of the merger, Steel Connect will become a wholly owned subsidiary
> of Steel Partners. The merger is subject to approval by Steel Connect's
> stockholders, as well as certain other customary closing conditions. The merger is
> not subject to a financing condition, and is expected to occur in the second half of
> 2022. Steel Connect will call a meeting of its stockholders for the purpose of voting
> on the adoption of the merger agreement in due course.
>
> The merger agreement includes a "go-shop" period that expires at 11:59 p.m.
> Eastern time on July 12, 2022, during which Steel Connect may actively solicit and
> consider alternative acquisition proposals. There can be no assurances that the "go-
> shop" process will result in a superior proposal, and Steel Connect does not intend
> to communicate developments regarding the process unless and until Steel Connect
> determines that additional disclosure is required or desirable.

*Potential Conflicts of Interest*

32.     The breakdown of the benefits of the deal indicate that Steel Connect insiders are

the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Steel Connect.

33.    Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Number of Shares of Common Stock[1] | Percent of Class[2] |
|---|---|---|
| **5% Stockholders** | | |
| Steel Partners Holdings L.P.[3] 590 Madison Ave. New York, New York 10022 | 42,333,555 | 50.0% |
| | | |
| **Directors** | | |
| Jeffrey J. Fenton[4] | 471,406 | * |
| Glen M. Kassan[5] | 425,650 | * |
| Maria U. Molland[6] | 189,314 | * |
| Warren G. Lichtenstein[7] | 1,655,599 | 2.7% |
| Jeffrey S. Wald[8] | 443,895 | * |
| Jack L. Howard[9] | 872,528 | 1.4% |
| Renata Simril[10] | 155,308 | * |
| | | |
| **Named Executive Officers** | | |
| Joseph B. Sherk[11] | — | * |
| John Ashe[12] | 134,700 | * |
| | | |
| All current executive officers and directors, as a group (11 persons)[13] | 4,417,843 | 7.3% |

34.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company.  The Preliminary Proxy Statement fails to give a complete accounting of these awards.

35.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Steel Connect, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

37.     On July 7, 2022, the Steel Connect Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  Adequate reasoning as to why no majority-of-the-minority vote was required, despite Parent and Company insiders collectively owning 57.3% of the outstanding shares;

b.  Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

d.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Steel Connect's Financial Projections*

39.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Steel Connect provided by Steel Connect management to the Board and Houlihan and relied upon by Houlihan in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Houlihan reviewed, "certain unaudited prospective financial and operating information" prepared by Company management.

41.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Steel Connect management provided to the Board, Houlihan, and Houlihan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42.     With regard to the *Projected Financial Information* prepared by Steel Connect, the Preliminary Proxy Statement fails to disclose material line items for important metrics.

    a.   With regard to *ModusLink Projections,* the Preliminary Proxy Statement fails to disclose the following:

        i.   The underlying inputs and assumptions used to determine growth rates of -11.1%, 19.5%, 3.8%, and 3.9% for years 2022E-2025E respectively;

        ii.   The underlying inputs and assumptions used to determine a change in costs of materials over time;

        iii.   The underlying inputs and assumptions used to determine a change in costs of goods sold over time;

        iv.   The underlying inputs and assumptions used to determine a change in operating expenses over time;

        v.   The individual adjustments used to account for the metric "Total Adjustments";

        vi.   A complete definition for, and all underlying inputs, metrics, and assumptions used to determine Adjusted EBITDA;

      vii. The underlying inputs, metrics, and assumptions used to determine growth rates of -37%, 60.9%, 10.8%, and 10.3% for years 2022E-2025E respectively in calculating Adjusted EBITDA;

      viii. A complete definition for, and all underlying inputs, metrics, and assumptions used to determine Adjusted EBIT; and

      ix. The underlying inputs, metrics, and assumptions used to determine growth rates of -37.4%, 61.4%, 13.5%, and 12.6% for years 2022E-2025E respectively in calculating Adjusted EBIT.

b. With regard to *Corporate Expense Projections,* the Preliminary Proxy Statement fails to disclose the following:

      i. Management Salary and Wages, including all underlying inputs, metrics, and assumptions, including specifically: Individual employee wages of Parent employees analyzed and allocation of time for functions performed for the benefit of the Company;

      ii. Other Professional Fees, including all underlying inputs, metrics, and assumptions, including specifically: legal fees, auditor fees, investor relations fees, stock market fees, and any other fees used to calculate this metric;

      iii. Taxes and other Expenses, including all underlying inputs, metrics, and assumptions, including specifically: tax preparation fees; and

      iv. All underlying inputs, metrics, and assumptions used to determine a change in expenses for years 2022E-2025E.

c. With regard to *NOL Projections,* the Preliminary Proxy Statement fails to

disclose the following:

    i.   The assumed tax rate for the Company for years 2022E-2025E; and

    ii.   Tax Adjustments (GITLI), including all underlying inputs, metrics, and assumptions used to determine this metric, including specifically: income earned by foreign affiliates of U.S. companies from intangible assets such as patents, trademarks and copyrights.

43.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Houlihan' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan*

46.    In the Preliminary Proxy Statement, Houlihan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47.    With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The multiples, inputs, metrics and assumptions used to determine EV/ LTM Adjusted EBITDA Multiples for each company compared, including specifically, the estimates of earnings before interest, taxes, depreciation and amortization;

   b.   The specific inputs, metrics, and assumptions for each company compared;

   c.   The specific, inputs, metrics, and assumptions used to determine selected multiple ranges of 4.0x to 6.0x LTM Adjusted EBITDA for illustrative purposes;

   d.   The specific, inputs, metrics, and assumptions used to determine selected multiple ranges of 4.0x to 6.0x fiscal year 2022 estimated Adjusted EBITDA; and

   e.   The specific, inputs, metrics, and assumptions used to determine selected multiple ranges of 4.0x to 6.0x fiscal year 2023 estimated Adjusted EBITDA.

48.    With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The specific date on which each transaction closed;

   b.   The value of each transaction compared;

   c.   The specific inputs, metrics, and assumptions for each transaction compared;

   d.   The number of fully diluted outstanding shares for the Company; and

    e.   The inputs, metrics, and assumptions used to determine the selected multiple range of 5.0x to 7.0x for LTM Adjusted EBITDA to the fiscal year 2022.

49.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumption used to determine perpetuity growth rates of 0.0%-2.0%;

    b.   The specific inputs and assumption used to determine discount rates ranging from 13.0% to 15.0%;

    c.   The inputs, metrics, and assumptions used to equity value reference range of $92.4 million to $117.5 million;

    d.   The outstanding balance of ModusLink cash and cash equivalents as of April 30, 2022; and

    e.   The present value of corporate expenses.

50.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

51.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Steel Connect stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

52.     Plaintiff repeats all previous allegations as if set forth in full herein.

53.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

54.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

55.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

59.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

#### (Against all Individual Defendants)

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

62. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Steel Connect's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

64.     The Individual Defendants acted as controlling persons of Steel Connect within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Steel Connect to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Steel Connect and all of its employees.  As alleged above, Steel Connect is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: July 26, 2022                                    **BRODSKY & SMITH**

By:   _/s/ Evan J. Smith_
      Evan J. Smith
      240 Mineola Boulevard
      Mineola, NY  11501
      Phone: (516) 741-4977
      Facsimile (561) 741-0626

      *Counsel for Plaintiff*